UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | Criminal No. ~~1:18-CR-~~ |
| | ) | 1:18-MJ-18 |
| JERRY CHUN SHING LEE, aka | ) | |
| Zhen Cheng LI | ) | |
| | ) | |
| Defendant | ) | |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Kellie R. O'Brien, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the FBI, and have been since 1999. Since 1999, I have been assigned to the Washington Field Office (WFO). I worked in the Criminal Division of WFO from 1999 to 2007, and since 2007 have been assigned to the Counterintelligence Division, where I investigate offenses involving espionage and the unlawful retention or disclosure of classified information.

2. I have training in the preparation, presentation, and service of criminal complaints, and have been involved in the investigation of numerous types of offenses against the United States. I have also been trained in the preparation, presentation, and service of arrest and search warrants, and have executed both arrest warrants and search warrants in previous cases.

3. The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other witnesses and law enforcement agents. This

affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and warrant. It does not set forth all of my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that JERRY CHUN SHING LEE, a.k.a. Zhen Cheng Li, (LEE) violated 18 U.S.C. § 793(e) (unlawful retention of national defense information). I therefore make this affidavit in support of a criminal complaint charging LEE with this offense.

## STATUTORY AUTHORITY AND DEFINITIONS

5. For the reasons set forth below, there is probable cause to believe that LEE committed violations of Title 18, United States Code, Section 793(e). Under 18 U.S.C. § 793(e), "[w]hoever, having unauthorized possession of, access to, or control over any document, writing......, or note relating to the national defense, .... willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it . . . shall be fined under this title or imprisoned not more than ten years or both[.]"

6. Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order [Top Secret, Secret, and Confidential]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

7. Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "Confidential" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to

2

the national security, the information may be classified as "Secret" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "Top Secret" and must be properly safeguarded.

8. Classified information of any designation may be shared only with persons determined by an appropriate United States Government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States Government information, that person is required to and must agree to properly protect classified information by not disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations.

## PROBABLE CAUSE

### Relevant Party

9. LEE is a 53-year-old former case officer for the Central Intelligence Agency (CIA), currently residing in Hong Kong and employed overseas. He is a naturalized United States (U.S.) citizen. LEE served in the U.S. Army from 1982-1986. LEE graduated from Hawaii Pacific University in 1992 with a bachelor's degree in International Business Management and in 1993 received a master's degree in Human Resource Management.

10. LEE entered duty with the CIA in 1994. As a case officer, LEE was trained in: methods of covert communications, surveillance detection, recruitment of assets, handling of assets, payment of assets, operational security, and documenting, handling and securing

classified material. In the course of LEE's employment he served in various overseas positions and locations, which all required a Top Secret clearance.

**LEE's U.S. Government Security Clearances**

13. As required for his various CIA assignments, in 1994 LEE first obtained a Top Secret security clearance, which was active throughout his career with the CIA. LEE's security clearance was terminated in 2007 when he left government service.

14. In addition to LEE's Top Secret clearance, he maintained sensitive compartmented information (SCI) access to various sensitive programs. To obtain access to these programs, LEE was required to receive and did receive numerous security clearance briefs during his employment. To acquire his security clearance, LEE signed a life-time binding non-disclosure agreement (government Form 368) on September 16, 1994. This form, in part, read:

> I understand that in the course of my employment....I may be given access to information or material that is classified or is in the process of a classification determination...that if disclosed in an unauthorized manner would jeopardize intelligence activities of the United States Government....
>
> 3. In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any manner, to any person not authorized by the Central Intelligence Agency to receive it, any information or material in either of the following categories:
>   a. information or material received or obtained in the course of my employment or other service with the Central Intelligence Agency that is marked as classified or that I know is classified;
>   b. information or material received or obtained in the course of my employment or other service with the Central Intelligence Agency that I know is in the process of a classification determination. . . .
>
> 7. I understand that all information or material that I may acquire in the course of my employment or other service with the Central Intelligence Agency that fits either of the categories set forth in paragraph 3 (paragraph 3 of this agreement) are and will remain the property of the United States Government, unless and until otherwise determined by an appropriate official or ruling of a court of law. I agree to surrender anything constituting, containing or reflecting such information

of the Central Intelligence Agency, or upon the conclusion of my employment of other service with the Central Intelligence Agency, and at all times thereafter.

15. Additionally, through the course of LEE's career with the CIA, LEE signed numerous SCI Nondisclosure Agreements (NDAs) (Form 4414), which read, in part:

> 2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed.....
>
> 3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation....
>
> 8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official....I agree that I shall return all materials that may come into my possession or for which I am responsible because of such access....

### Court-Authorized Searches

16. On or about August 10, 2012, LEE and his family departed Hong Kong and transited back to the United States to live in northern Virginia. While transiting back to the United States, LEE and his family had a lay-over in Honolulu, Hawaii for several days.

17. On or about August 11, 2012, surveillance teams observed LEE staying at a hotel in Honolulu. LEE checked into and stayed at this hotel from August 11, 2012, through August 14, 2012, according to records provided to the FBI by the hotel.

18. On August 13, 2012, a court-authorized search of LEE's Honolulu hotel room and luggage was conducted. Photographs were taken documenting items in LEE's possession.

19. On August 15, 2012, LEE and his family arrived in Virginia, and checked into a hotel in Fairfax, Virginia, within the Eastern District of Virginia. On August 15, 2012, a court-authorized search of LEE's hotel room was conducted. Items in LEE's possession were photographed.

5

20. The government's investigation determined that LEE was in unauthorized possession of materials relating to the national defense during his hotel stays in Hawaii and Virginia. A review of photographs taken during the August 13, 2012, search in Hawaii and the August 15, 2012, search in Virginia revealed that, during his stay in both hotels, LEE possessed two small books (the "books") best described as a datebook and an address book. Each book contained handwritten notes. During both searches the books were located inside LEE's luggage in a small, clear plastic travel pack.

21. The photographs of the books were reviewed by a CIA classification authority who determined that the books contained classified information. The datebook contained approximately forty-nine pages. Only pages with writing were photographed. The datebook contained handwritten information pertaining to, but not limited to, operational notes from asset meetings, operational meeting locations, operational phone numbers, true names of assets, and covert facilities. The address book contained approximately twenty-one pages. The address book contained true names and phone numbers of assets and covert CIA employees, as well as the addresses of CIA facilities. The CIA classification authority determined that the books contained classified information, up to and including Secret information and, in at least one instance, Top Secret information, the disclosure of which could cause exceptionally grave damage to the National Security of the United States.

22. Classified cables that LEE wrote when he was a case officer, which describe his interactions with assets and information he learned from those meetings, and for which he was the derivative classification authority, contain much of the information reflected in the books.

23. Based upon the court-authorized search on August 15, 2012, LEE remained in possession of the two books from Hawaii to the northern Virginia area. From August 15, 2012,

through June 6, 2013, LEE resided in the northern Virginia area. Before he returned to the United States and throughout his residence in northern Virginia, LEE met with former colleagues from the CIA and other government employees and remained in contact with these individuals. Neither during these meetings nor other opportunities while in northern Virginia, did LEE ever surrender or return the books to appropriate U.S. Government officials, as required under the NDAs he signed. Nor, in communications with former CIA colleagues and other U.S. Government officials, did he mention that he was in possession of the books. Additionally, LEE was interviewed by FBI agents on five separate occasions in or about May and June 2013 and never suggested that he possessed these books.

## CHARGES – 18 U.S.C. § 793(e)

24. Having unauthorized possession of the books, which contained documents, writings, and notes related to the national defense, LEE willfully retained the two books and failed to deliver the materials to an officer or employee of the United States entitled to receive them, in violation of 18 U.S.C. § 793(e).

## CONCLUSION AND SEALING REQUEST

25. For all the reasons stated above, there is probable cause to believe that LEE, having unauthorized possession of documents, writings, and notes relating to the national defense, willfully retained them in violation of 18 U.S.C. § 793(e). This criminal violation was, in part, committed in the Eastern District of Virginia.

26. I ask that this affidavit be sealed, until further order of the court, to protect this investigation. I am aware from my training and experience that evidence is destroyed, individuals flee, and witnesses may be tampered with or become uncooperative when the details

known to law enforcement become prematurely available to the targets of a criminal investigation.

27. I declare under the penalty of perjury that the information provided above is true and correct.

Respectfully submitted,

Kellie R. O'Brien
Special Agent
Federal Bureau of Investigation
Washington, D.C.

Sworn to and subscribed before me
this 13th day of January 2018.

_____/s/_____
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge